IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | | |
|---|---|---|
| CARLOS HERRERA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CIVIL ACTION NO. 1:15-09028 |
| v. | ) | |
| | ) | |
| BART MASTERS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

PROPOSED FINDINGS AND RECOMMENDATION

On January 4, 2013, Petitioner, acting *pro se*, filed his Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody. (Document No. 1).[1] In his Petition, Petitioner complains that his due process rights were violated during disciplinary proceedings causing a loss of a liberty interest in his good time credit. (Id.) Petitioner states that his due process rights were violated by the following: (1) "Petitioner received a written report 20 days later;" (2) Petitioner "did not receive a written and signed waiver time limit notice by the Warden or a Notice of Investigation or Detention Order;" (3) "The UDC did not come to interview him until a month later;" (4) "Petitioner requested a staff representative and received a non-Spanish speaking individual that caused a communication barrier;" (5) Petitioner "was denied and deprived of documentary, physical, and video tape evidence to prepare his self-defense claim;" (6) Petitioner's staff representative acted ineffectively; and (7) The DHO relied on insufficient and unreliable evidence. (Id., pp. 10 - 12.) As relief, Petitioner requests his

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

"immediate release to INS for deportation and an order for the FBOP to dismiss all sanctions and restore GCT back, and entry of a judgment that Petitioner's rights were violated." (Id.)

By Order entered on July 7, 2015, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of Habeas Corpus sought by the Petitioner in this case should not be granted. (Document No. 9.) On July 13, 2015, Respondent filed his Response to the Order to Show Cause. (Document No. 11.) Respondent argues that Petitioner's Petition should be denied based on the following: (1) "Petitioner received the rights afforded pursuant to *Wolff*" (Id., pp. 8 - 10.); and (2) Petitioner's claim of ineffective staff representation are without merit (Id., pp. 10 - 13.)

As Exhibits, Respondent attaches the following: (1) The Declaration of Sharon Wahl (Document No. 11-1, pp. 2 - 3.); (2) A copy of the "Incident Report" dated April 1, 2015, indicating that Petitioner violated Offense Code 201 (Id., pp. 5 - 6.); (3) A copy of the "Notice of Discipline Hearing Before the DHO" dated April 4, 2015 (Id., p. 8.); (4) A copy of the "Inmate Rights at Discipline Hearing Form" dated April 4, 2015 (Id., pp. 10 - 11.); (5) A copy of the Discipline Hearing Officer Report dated April 13, 2015 (Id., pp. 13 - 15.); (6) A copy of the "Administrative Detention Order" dated March 11, 2015 (Id., p. 18.); and (7) The Declaration of R. Devereaux (Document No. 11-2.)

On July 29, 2015, Petitioner filed his "Reply or Objections to Respondent's Answer" and Amended Section 2241 Petition. (Document Nos. 13 and 14.) In his "Reply or Objections" and Amended Petition, Petitioner continues to assert the same arguments as asserted in his original Petition. (Id.)

## DISCUSSION

**1.     Mootness:**

The undersigned finds that Petitioner's Section 2241 Application must be dismissed as

moot. Article III, Section 2 of the United States Constitution provides that federal Courts may

adjudicate only live cases or controversies. See Lewis v. Continental Bank Corp., 494 U.S. 472,

477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990); Nakell v. Attorney General of North

Carolina, 15 F.3d 319, 322 (4th Cir.), cert. denied, 513 U.S. 866, 115 S.Ct. 184, 130 L.Ed.2d 118

(1994). This means that the "litigant must have suffered, or be threatened with, an actual injury

traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. In the

context of a *habeas corpus* proceeding, the writ "does not act upon the prisoner who seeks relief,

but upon the person who holds him in what is alleged to be unlawful custody." Braden v. 30th

Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-95, 93 S.Ct. 1123, 1129, 35 L.Ed.2d 443

(1973). In this case, by virtue of Petitioner's release from custody, the Respondent can no longer

provide the requested relief. Consequently, the Court can no longer consider Petitioner's

Application under Section 2241.

> An incarcerated convict's (or a parolee's) challenge to the validity of his
> conviction always satisfies the case-or-controversy requirement, because the
> incarceration (or the restriction imposed by the terms of the parole) constitutes a
> concrete injury, caused by the conviction and redressable by invalidation of the
> conviction. Once the convict's sentence has expired, however, some concrete and
> continuing injury other than the now-ended incarceration or parole - - some
> "collateral consequence" of the conviction – must exist if the suit is to be
> maintained.

Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 983, 140 L.Ed.2d 43 (1998). Accordingly,

Petitioner's claims are rendered moot by virtue of his release from custody[2] and the absence of

---

[2]   The Bureau of Prisons' Inmate Locator indicates that Petitioner was released from custody on

collateral consequences, and therefore, his Section 2241 Application must be dismissed. See e.g.,

Alston v. Adams, 178 Fed.Appx. 295, 2006 WL 1194751 (C.A.4 (Va.)); Alvarez v. Conley, 145

Fed.Appx. 428, 2005 WL 2500659 (C.A.4 (W.Va.); Smithhart v. Gutierrez, 2007 WL 2897942

(N.D.W.Va.). Notwithstanding the foregoing, the undersigned will briefly consider the merits of

Petitioner's claims.

**2.       Due Process Violation Pursuant to Wolff:**

In considering an inmate's application for *habeas* relief under 28 U.S.C. § 2241, the

Court must consider whether the Petitioner is "in custody in violation of the Constitution or laws

or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96

S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). Although the Fifth Amendment of the United States

Constitution prohibits the federal government from depriving any person of "life, liberty, or

property, without due process of law," the range of protected liberty interests for defendants

convicted and confined in prison are significantly reduced for their period of incarceration. See

U.S. Const. Amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of

conviction implies the defendant's transfer of his liberty to prison officials, who in their broad

discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to

prison does not strip a prisoner of *all* liberty interests." Gaston v. Taylor, 946 F.2d at 343

(emphasis added).

To determine whether an inmate retains a certain liberty interest, the Court must look to

the nature of the claimed interest and determine whether the Due Process Clause applies. See

Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33

---

September 3, 2015.

L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a

legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex,

442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth,

408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an

inmate possesses a claim of entitlement in those interests "which were not taken away, expressly

or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the
> sentence in such an unexpected manner as to give rise to protection by the Due
> Process Clause of its own force, nonetheless imposes atypical and significant
> hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations

omitted). Consequently, in order to establish that a deprivation of his due process rights has

occurred, Petitioner must identify a liberty interest which is protected by the Due Process Clause

of the United States Constitution. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d

935 (1974) (holding that an inmate cannot be deprived of a protected liberty interest in

good-time credits without procedural due process).

When a disciplinary sanction impacts the duration of a federal inmate's sentence, a

protected liberty interest in the inmate's release from confinement is implicated, and minimal

procedural guarantees are recognized. Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195,

85 L.Ed.2d 553 (1985). The Supreme Court stated what procedure is required at a minimum in

Wolff, supra. An inmate subject to administrative disciplinary sanctions impacting the duration

of his sentence is entitled (1) to receive advance notice of charges no less than 24 hours before

the disciplinary hearing, (2) to present evidence and witnesses in his defense as long as it does

not jeopardize institutional safety or correctional goals, and (3) to receive a written statement of

the evidence relied upon and the reasons for the disciplinary action. Id., 418 U.S. at 563 - 569, 94

S.Ct. at 2978 - 2981. BOP regulations are clearly written in view of the constitutionally required

minimum, but the failure of prison officials to follow their own internal policies, procedures or

regulations alone is insufficient to make out a due process violation when a protected liberty

interest is evident as long as the constitutionally required minimum is met. See Myers v.

Klevenhager, 97 F.3d 91, 94 (5th Cir 1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995),

cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes

additionally that the Supreme Court has indicated that prison regulations are not designed to

confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional

officials in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct.

2293, 132 L.Ed.2d 418 (1995).

Having thoroughly examined the record in this case, the undersigned finds no indication

of error of constitutional magnitude in the disciplinary proceedings. It is clearly evident that in

charging and considering Petitioner's violation of Offense Code 201, prison officials adequately

adhered to the policies and procedures as prescribed in 28 C.F.R. § 541 and the Bureau of

Prisons' Program Statement 5270.07. A review of the record reveals that Petitioner received all

of the minimum due process safeguards set forth in Wolff. Petitioner received all documents

pertinent to the charges against him, was advised of his rights, and had ample opportunity to

present a defense to those charges. The record reveals that Petitioner received written notice of

the charges at least 24 hours before the DHO hearing. Specifically, Petitioner received a copy of

the Incident Report[3] on April 1, 2015, and the DHO hearing was conducted on April 8, 2015.

---

3  The Incident Report dated April 1, 2015, described the incident as follows (Document No. 11-1, p. 5.):

Petitioner, however, contends that Respondent violated his due process rights because he did not receive a copy of his Incident Report within 24 hours after the incident occurred. The regulations merely provide that an inmate is "ordinarily" entitled to a copy of his Incident Report within 24 hours after staff becomes aware of the inmate's involvement in the incident. See 28 C.F.R. § 541.15(a)("Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, 'ordinarily' within 24 hours of the time staff became aware of the inmate's involvement in the incident.") The record reveals that underlying fight occurred on March 11, 2015, and an investigation by the SIS Department was initiated following the fight. The investigation was completed on April 1, 2015, and on the same date the Incident Report was written and issued to Petitioner. The undersigned, therefore, finds that prison officials did not violate Section 541.15(a). Furthermore, the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation. See Smith v. Cross, 2010 WL 5525178, * 5 (N.D.W.Va. June 11, 2010)("[T]he fact that the petitioner did not receive the incident report until seven days after the incident occurred, and did not have his UDC hearing within five working days does not present a denial of the petitioner's

---

> On April 1, 2015, at 11:30 a.m., an SIS investigation to include a review of recorded video footage, concluded and determined [Inmate X] was involved in a physical altercation with Carlos Herrera Reg. No. 14465-179 in indoor recreation. Specifically, on March 11, 2015, inmates Herrera and [Inmate X] were sitting at a game table in indoor recreation. At approximately 12:49 pm, inmates Herrera and [Inmate X] both stand and trade punches to the head and upper torso area. During an interview, Herrera admitted to fighting with another inmate over the use of a table in indoor recreation, however he refused to identify who he was fighting with. Inmate [Inmate X] sustained the following injuries: minor abrasion on right upper chest near clavicle. Inmate Herrera sustained the following injuries: small laceration above right eye, welling of the lip, bruising to right ear, an abrasion to mid chest, and a small cut on the inner right 3rd finger.

due process guarantees.") Accordingly, prison officials' failure to provide Petitioner a copy of his Incident Report within 24 hours of the incident did not result in a due process violation.

Next, the undersigned will consider Petitioner's claim that his due process rights were violated because Counselor Harper failed to act as an effective staff representative. Petitioner first complains that Counselor Harper was non-Spanish speaking, which created a language barrier. The record, however, does not support Petitioner's claim that there was a language barrier or that he could not understand the proceedings. There is no indication that Petitioner requested an interpreter during the DHO hearing. In his Declaration, DHO Deverezux states, in pertinent part, as follows:

5.      I recall Petitioner's DHO hearing, which took place on April 8, 2015.

6.      Petitioner was able to speak with me in English during the discipline hearing.

7.      Petitioner did not request an interpreter at any time during the hearing and did not appear to have any problems understanding the proceedings.

8.      Had Petitioner requested an interpreter, one would have been provided for him.

9.      If I believed Petitioner was having difficulty understanding the English language or that there was a communication barrier, I would have postponed the hearing until an interpreter could be present, even in the absence of such a request by Petitioner.

(Document No. 11-2.) The undersigned further notes that all documents filed by Petitioner in the instant action are written in English and there is no indication that Petitioner has difficultly with the English language. Second, Petitioner argues that his staff representative acted ineffectively. Petitioner complains that after viewing the video footage, his staff representative acknowledged that on the video he observed Petitioner and the other inmate stand up at the table and Petitioner

initiated the first contact by pushing the other inmate. Criminal defendants have the constitutional right to effective assistance of counsel through a direct appeal. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); also see Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). This Sixth Amendment right, however, only applies to criminal prosecutions. See Kirby v. Illinois, 406 U.S. 682, 690, 92 S.Ct. 1877, 1882, 32 L.Ed.2d. 411 (1972). Prison disciplinary proceedings are not criminal prosecutions within the meaning of the Sixth Amendment. See Wolff, 418 U.S. at 556, 570, 94 S.Ct. at 2975, 2981. Since Petitioner was not entitled to counsel at his disciplinary hearing, Petitioner cannot claim he was denied his Sixth Amendment right to effective assistance of counsel. Accordingly, Petitioner's claim that prison officials violated his constitutional right to effective assistance of counsel during his disciplinary proceeding is without merit.

Third, Petitioner contends that he was denied due process when prison officials refused to allow Petitioner to review the video footage. The record reveals that during the DHO hearing, Petitioner requested that his staff representative be allowed to review the video.[4] The DHO took a recess to provide the staff representative the opportunity to watch the video. Following the staff representative's review of the video, the staff representative and Petitioner advised the DHO that they were prepared to proceed with the hearing. Thus, the record reveals that the video footage was viewed by Petitioner's staff representative and considered by the DHO. In disciplinary hearings, due process is satisfied when the findings of the disciplinary authority are supported by "some evidence." The undersigned finds that prison staff, the UDC and the DHO acted fully

---

[4]  In her Declaration, Ms. Wahl explains that "[w]hen there is video evidence, the staff representative is able to review the video, whereas the inmate may not, based on security concerns (video footage shows the location and area coverage of security cameras) and the privacy of other individuals shown in the video." (Document No. 11-1, p. 2.)

within their discretion in developing the evidence which resulted in the finding that Petitioner

was guilty of violating Offense Code 201. In addition to the Incident Report and Investigation,

the DHO considered the medical assessment of Petitioner and Inmate X, the SIS Investigative

Report, and the video footage of the incident. (Document No. 11-1, pp. 13 - 16.) In finding that

Petitioner violated Codes 203, the DHO specifically stated that it relied upon the following:

> The DHO finds that Herrera committed the prohibited act of fighting with another person. To make this finding the DHO relied on the following statement provided by the reporting officer which was contained in the Incident Report:
>
> * * *
>
> Inmate Herrera stated to the Investigating Lieutenant that he would have the incident report expunged. Herrera stated to the UDC "nothing in this is true. I did not fight with anyone." Herrera appeared before the DHO and denied the charge. Herrera stated he did not fight but in fact was assaulted by [Inmate X]. Herrera stated [Inmate X] came from behind and struck him. Herrera stated he never swung at or touched [Inmate X]. Herrera stated the video would show he didn't fight and requested his staff representative to review it.
>
> The DHO considered Herrera's statement that he did not fight [Inmate X], but in fact was assaulted by [Inmate X]. The DHO temporarily suspended the hearing in order for Herrera's staff representative, Counselor J. Harper, to review the video footage in the SIS department. The hearing was reconvened upon J. Harper's return. At this point, the DHO again asked Herrera if he had engaged in a fight with [Inmate X]. Herrera stated he never swung at or touched [Inmate X]. Herrera stated he demonstrated no aggression towards [Inmate X]. The DHO asked J. Harper to relay what he had observed on the video footage. J. Harper stated after reviewing the video footage of the incident he concurred with the reporting officer's description noted in section 11. J. Harper stated he observed Herrera and [Inmate X] stand up at the table and Herrera initiated the first contact by pushing [Inmate X], [Inmate X] pushed back and then they both swung fists at each other. J. Harper stated he was unable to tell whether Herrera actually made contact with [Inmate X]. At the hearing, Herrera stated he acted in self-defense.
>
> The DHO considered all of Herrera's statements and the information provided by J. Harper after reviewing the video footage of the incident. Initially Herrera wanted the DHO to believe he was the victim of an assault and in no way engaged in a fight with [Inmate X]. Then, when his staff representative relayed what he observed on the video, Herrera altered his statement and claimed he was just acting in self-defense. The DHO finds both of Herrera's statements lack any

credibility. The reporting officer's statement clearly describes a fight between [Inmate X] and Herrera. Furthermore, J. Harper's statement that Herrera initiated contact by pushing [Inmate X] first, leads the DHO to find Herrera's claim of self-defense is as ridiculous as his initial claim that he was the victim of an assault. The DHO informed Herrera that his actions do not demonstrate defense but in actuality, aggression.

(Id.) Based on the foregoing, the undersigned finds no violation of Petitioner's due process rights because there was "some evidence" to support the DHO's decision. The finding was supported by sufficient evidence and the sanctions[5] were lawful and appropriate.[6] As stated above, Petitioner was given written notice of the charges against him at least 24 hours before his hearing, Petitioner received a statement of the reasons for the unfavorable decision in the form of a written report, and Petitioner had the opportunity to call witnesses in his defense. Accordingly,

---

[5]   The DHO imposed the following sanction: (1) "Disallow 23 days Good Conduct Time;" (2) "Forfeit 60 days Non-Vested Good Conduct Time;" (3) "45 days Disciplinary Segregation;" and (4) "180 days Loss of Commissary and Telephone Privileges." (Document No. 11-1, p. 15.)

[6]   The DHO stated the "Reason for Sanction or Action Taken" as follows (Document No. 11-1, p. 15.):

> The action/behavior on the part of any inmate to become involved in a fight with any other person poses a threat to the health, safety and welfare of not only himself, but all other inmates and staff within the institution. In the past, fights between two individuals have expanded to include others which created a larger problem for staff to resolve. This type of behavior cannot and will not be tolerated.
>
> The sanction of the disallowance of Good Conduct time is imposed to comply with the inmate discipline policy regarding recommended disallowance of Good Conduct Time when an inmate is found to have committed a High Severity prohibit act.
>
> The sanction of the forfeiture of Non-Vested Good Conduct Time is imposed to impress upon Herrera the severity of his misconduct.
>
> The sanctions of Disciplinary Segregation, Commissary and Telephone Restrictions are imposed to punish Herrera for his actions in relation to having committed this prohibited act and to serve as a deterrent to keep others from committing similar acts.

11

the undersigned finds that the disciplinary hearing comported with the due process requirements.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody and Amended Section 2241 Petition (Document Nos. 1 and 14) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber,

and this Magistrate Judge.

       The Clerk is requested to send a copy of this Proposed Findings and Recommendation to

Petitioner, who is acting *pro se*.

       ENTER: February 2, 2016.

Omar J. Aboulhosn
United States Magistrate Judge